UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROOCHI TRADERS INCORPORATED,

                                     Plaintiff,        Civ. Act. No: 08 CV 3544 (WHP)

             - against -                           MEMORANDUM OF LAW IN
                                                                     OPPOSITION TO
TIP TOP TEES INC., GLAMOUR LINE INC.,        PLAINTIFF'S ORDER TO
GLAMOUR (USA), INC., ALPHA                              SHOW CAUSE
MERCHANDISING CORP., ROSE DEAL, INC.,
HARYASH PAUL, MOHAMMED RAHMAN,
MOHAMMED FAROQUE, JOHN DOES1-10,
JANE DOES 1-10, and XYZ COMPANIES 1-10,
                                         Defendants.
------------------------------------------------------------X

        Defendants TIP TOP TEES INC., GLAMOUR LINE INC., ALPHA MERCHANDISING CORP., and HARYASH PAUL (hereinafter simply "Paul Haryash"), collectively hereinafter simply "Paul-Defendants", submit the following in opposition to Plaintiff's Order to Show Cause. Plaintiff has brought this action against the Defendants alleging that they are engaged in illicit commerce in counterfeit T-shirts, bearing the Plaintiff's trademark COTTON HERITAGE. The temporary restraining order (TRO) has been granted pursuant to 15 USC § 1116(d).

        1.        Plaintiff's application for this TRO depended in largest part on the declaration of Sajid Ali ("Ali"). Ali's declaration contains little hard evidence of the allegations made against Paul-Defendants. Taken at its highest, Ali only establishes that he obtained two allegedly counterfeit COTTON HERITAGE T-shirts from a business not operated by any defendants, namely West Side Socks, located at 25 West 27th Street and that these goods were initially contained in boxes bearing the name of a different defendant, namely Rose Deal, Inc. Ali attempts to link Paul-Defendants to this allegedly counterfeit merchandise by hearsay statements of unnamed persons mentioned in Ali's own declaration. Further, Ali does not name the person

to whom Haryash Paul allegedly boasted of Plaintiff's inability to stop his alleged counterfeiting activities.

2. The investigators engaged by Plaintiff, who have also submitted declarations, namely Stephen G. Ward ("Ward") and Miguel Sampaio ("Sampaio") add nothing further of any substance which makes a case against Defendants. Sampaio states in terms that when he visited the business premises (10 West 28th Street) of Tip Top Tees, Inc., on March 27, 2008, he saw no counterfeit merchandise. Sampaio further recounted a conversation with a "Mr. Paul", presumably allegedly Haryash Paul, in which, conspicuously, any reference to trade in counterfeit merchandise is absent. Sampaio alleges that he returned the same day to 10 West 28th Street and saw a stack of COTTON HERITAGE T-shirts but Sampaio cannot say (despite Ms. Rupp's misstatement to the contrary) whether such goods were counterfeit or not since he bought none of them. Sampaio provides no evidence linking Rose Deal, Inc. to any Paul-Defendant.

3. Ward similarly provides nothing of substance against Defendants to support Plaintiff's allegations in this matter but has, instead, simply assembled as much prejudicial material as he can. For example, Ward attempts to portray Haryash Paul as some sort of fly-by-night by referring to addresses he has used as 'residences'. The address given of 50-11 38th Street, 3rd floor, Long Island City, New York 11101 was, on information and belief, an apartment occupied by Haryash Paul prior to the arrival of his wife and children in the United States. The address given at 1220 Broadway, room 402, New York, New York 10001 pertains to business premises, not a residence, as the remainder of Ward's declaration makes clear. The address of 17 Westmoreland Road, Hicksville New York 11801, is the Paul family home, being purchased on a mortgage. Ward intriguingly states that he conducted Dun & Bradstreet searches on the corporate Defendants but discovered no true profile, whatever that is supposed to prove. Ward

discovers a Maryash Paul with the same date of birth as Haryash Paul – this is insignificant - on information and belief this is a clerical error on the part of some third party for which Haryash Paul was not responsible.  The assertion by Ward that it is not known what role Anika Paul has in the counterfeiting operation would be laughable were it not so unpleasant.  Anika Paul is Haryash Paul's daughter and a student at Nassau Community College.

4. Neither Ward, Sampaio nor Plaintiff's attorneys submitted any statements from any businesses which allegedly purchased counterfeit COTTON HERITAGE goods from any Defendant and Plaintiff's declarations do not contain the names of any business owners who were contacted by any Defendant to make such a purchase.  This omission is odd, when one pauses to consider that it is alleged that Defendants are carrying out a nationwide counterfeiting scheme against Plaintiff.

5. The photographs attached by Plaintiff to its moving papers are simply of boxes labeled Rose Deal, Inc.  Rose Deal, Inc. actually has a brand of its own, bearing the label ROSE DEAL, inc., and manufactures and sells T-shirts bearing this trademark. There is absolutely no evidence to prove that what was inside any of the boxes photographed by Plaintiff was actually allegedly counterfeit merchandise, as opposed to Rose Deal, Inc.'s own, legitimate, product. Plaintiff's submissions do not contain the personal names of any business owners who purchased shirts from the Defendants, so as to permit investigation to be made.

6. Furthermore, Plaintiff is yet to offer any proof from any independent witness that any goods recovered and/or seized in this matter are actually counterfeit COTTON HERITAGE goods.  To date, save for the self-serving assertion of Ali regarding two shirts taken from West Side Socks, this has merely been alleged, notwithstanding that Plaintiff seized a quantity (90 dozen) of COTTON HERITAGE T-shirts from 10 West 28th Street on April 17, 2008, pursuant

to the TRO, and alleges orally through counsel, that the same were counterfeit. On information and belief Plaintiff had a prior business relationship with Rose Deal, Inc.'s affiliate (Humatnoor Knitwear (Pvt.) Ltd.) in Bangladesh and formed an entity there to pursue this joint venture, Cotton Heritage Ltd. (see Paul declaration, paras. 3-5). This relationship has now ended acrimoniously. On information and belief, any COTTON HERITAGE goods in which Paul-Defendants dealt were genuine, not counterfeit, made in Bangladesh by Rose Deal, Inc., or by Humatnoor Knitwear (Pvt.) Ltd., or Cotton Heritage Ltd., or some similar arrangement. Plaintiff now seeks to disown such goods for its own commercial and/or nefarious reasons, believed to emanate from the foregoing dispute.

       7.       The required showing for Plaintiff to be entitled to a TRO is well-established. Plaintiff conspicuously failed to meet the required standard. Plaintiff must show all of the following, namely that (1) no other remedy other than an ex parte seizure will be adequate to protect its interests – here the goods are highly likely the Plaintiff's own genuine merchandise, which it now seeks improperly to disown: OR DA INDUSTRIES, LTD., v. LEISURE LEARNING PRODUCTS, INC., 479 F.Supp. 710, (S.D.N.Y. 1979); (2) that Plaintiff will suffer immediate and irreparable harm without the seizure – if the goods in question are in fact the Plaintiff's, or if the goods are grey market goods produced pursuant to a valid purchase order from Plaintiff, or if the goods are so substantially similar to Plaintiff's goods as to be indistinguishable there from, then there can be serious suggestion of irreparable harm: WARNER-LAMBERT COMPANY v. NORTHSIDE DEVELOPMENT CORPORATION, 86 F.3d 3, (2d Cir. 1996), also Plaintiff has not offered any evidence in regard to its spending on advertising, marketing, promoting, or developing the brand, which makes the brand valuable, furthermore Plaintiff must offer proof of actual harm to the value of the brand not simply that the

counterfeit goods were sold in place, and not simply a likelihood of harm: MOSELEY v. V SECRET CATALOGUE, INC., et al., 537 U.S. 418, (2003); (3) Plaintiff must show that it is likely to succeed on the merits in proving counterfeiting – if Defendants' contentions are correct, then there is simply no counterfeiting in this instance: WARNER-LAMBERT COMPANY v. NORTHSIDE DEVELOPMENT CORPORATION, 86 F.3d 3, (2d Cir. 1996); (4) harm to the Plaintiff outweighs the harm to the defendant – again, if the goods are not counterfeit, the harm to the Plaintiff is nil, whereas Defendants' legitimate business is/will be severely harmed by the TRO and the Preliminary Injunction sought. Further, plaintiff must show (5) that it has not publicized the seizure request; (6) the items to be seized are located in the place specified in the application; (7) that defendant would likely destroy, move, or hide the counterfeit merchandise if given notice of the application and (8) that the relevant U.S. Attorney's office has been given notice of the application beforehand.

8. Plaintiff's prior business relationship with manufacturers in Bangladesh, i.e. making COTTON HERITAGE products under some joint-venture arrangement, will make it impossible for Plaintiff to show the date of manufacture of any particular shirt and that it is counterfeit. In such circumstances, Plaintiff actually has a very poor chance of prevailing at trial. Furthermore, if the allegations made regarding Plaintiff's dishonest Customs' duty evasion are true, this will have a huge impact on the credibility of Plaintiff's witness and plausibility of its case. For all of the reasons given above, it is respectfully submitted that the TRO should be vacated and the application for a Preliminary Injunction denied. It is also noteworthy that Ali reports (declaration, para. 9) that he was told that the COTTON HERITAGE T-shirts supplied by ROSE Deal, Inc., bore a label which was an <u>exact copy</u> of Plaintiff's label. This stands in stark contrast to Ali's self-serving assertion that the shirts he took from West Side Socks were

counterfeit – as an admission against interest it carries more weight that any self-serving statement.

9. Alternatively, if the Court determines that a Preliminary Injunction should be granted, then its scope requires curtailment. Plaintiff has made no showing in its papers that Paul-Defendants have any intention to dissipate assets so as to frustrate any equitable accounting to which Plaintiff might ultimately be entitled. On the contrary, Paul-Defendants have substantial legitimate business (see Paul declaration, para. 14), making it unlikely that feared dissipation of assets will occur. Additionally, Haryash Paula United States citizen, is married with a wife and three children and currently buying a house on a mortgage - hardly the profile of a man who is about to flee. It is wholly unreasonable that Defendants should have to provide details of assets to Plaintiff or to obtain Plaintiff's permission for expenditures.

10. Plaintiff has posted a $5,000 bond to compensate the Defendant in the event that the preliminary injunction and TRO are improper. It is clear from the allegations contained in Plaintiff's declarations that once one excises the hearsay statements of unnamed third parties and gives proper weight to the self-serving statements of Ali, there is no proof of these allegations. These allegations are actually unfounded, on information and belief. Furthermore, Plaintiff's papers contain no allegations as to monetary loss and contain no allegations as to damage to reputation among Plaintiff's customers. One of Plaintiff's major complaints is that the customers were so happy with the alleged counterfeit goods that they no longer wanted to purchase genuine goods from Plaintiff. If Plaintiff's T-shirts are in anyway superior to the alleged counterfeits then it is surprising that Plaintiff has offered no evidence of complaints about the quality of alleged counterfeits. Plaintiff's true complaint is that it is being undersold – a matter which can

be compensated monetarily, rendering an injunction unnecessary. Paul-Defendants are entitled to the bond posted, which was very small given the scope of the damage claimed.

11. In conclusion, Paul-Defendants respectfully requests that this Court discharge the Temporary Restraining Order and deny all other relief sought by Plaintiff herein, and grant such other and further relief as the Court finds just and proper.

Dated: New York, New York
April 28, 2008

_____S/_____
JAMES MONTGOMERY (JM0533)
Attorney for Defendants
TIP TOP TEES INC., ALPHA
MERCHANDISING CORP., GLAMOUR
LINE INC., HARYASH PAUL
267 Fifth Avenue, Suite 601
New York, New York 10016
(212) 889-9828 (tel)
(212) 889-9818 (fax)