UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROOCHI TRADERS INCORPORATED,<br><br>*Plaintiff,*<br><br>-against-<br><br>TIP TOP TEES INC., GLAMOUR LINE INC., GLAMOUR (USA), INC., ALPHA MERCHANDISING CORP., ROSE DEAL, INC., HARYASH PAUL, MOHAMMED RAHMAN, MOHAMMED FAROQUE, JOHN DOES 1-10, JANE DOES 1-10, and XYZ COMPANIES 1-10,<br><br>*Defendants.* | CIVIL ACTION NO.<br><br>COMPLAINT<br><br>[FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116] |

Plaintiff Roochi Traders Incorporated ("Plaintiff" or "Roochi") hereby files this Complaint for trademark counterfeiting, trademark infringement, racketeering activities, and related claims against Defendants Tip Top Tees Inc., Glamour Line Inc., Glamour (USA), Inc., Alpha Merchandising Corp., Rose Deal, Inc., Haryash Paul, Mohammed Rahman, Mohammed Faroque, John Does 1-10, Jane Does 1-10, and XYZ Companies 1-10 on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

### THE PARTIES

1.  Plaintiff, Roochi Traders Incorporated ("Roochi"), is a California corporation having its principal place of business at 6393 East Washington Boulevard, City of Commerce, California 90040.

2. Upon information and belief, defendant, Tip Top Tees, Inc. ("Tip Top Tees"), is a New York corporation having a place of business at 10 West 28th Street, 2nd Floor, New York, NY 10001.

3. Upon information and belief, defendant, Haryash Paul, has a regularly established place of business within this judicial district at 10 West 28th Street, 2nd Floor, New York, NY 10001. Upon information and belief, defendant, Haryash Paul, substantially owns, controls and operates defendant, Tip Top Tees, and the acts of the corporate defendant are also the acts of the individual defendant.

4. Upon information and belief, defendant, Glamour Line, Inc. ("Glamour Line") is a New York corporation having a place of business at 1220 Broadway, Room 402, New York, NY 10001. Upon information and belief, defendant, Haryash Paul, substantially owns, controls and operates defendant, Glamour Line, and the acts of the corporate defendant are also the acts of the individual defendant.

5. Upon information and belief, Glamour (USA), Inc. ("Glamour USA") is a New York corporation having a place of business at 1220 Broadway, Room 402, New York, NY 10001. Upon information and belief, defendant, Haryash Paul, substantially owns, controls and operates defendant, Glamour USA, and the acts of the corporate defendant are also the acts of the individual defendant.

6. Upon information and belief, Alpha Merchandising Corp., ("Alpha Corp.") is a New York corporation having a place of business at 10 West 28th Street, New York, NY 10001. Upon information and belief, defendant, Haryash Paul, substantially owns, controls and operates defendant, Alpha Corp., and the acts of the corporate defendant are also the acts of the individual defendant.

7. Upon and information and belief, Rose Deal, Inc. ("Rose Deal") is a New York corporation having a place of business at 3302 Broadway, Astoria, New York 11106.

8. Upon information and belief, Mohammed Rahman is an individual conducting and transacting business at 3302 Broadway, Astoria, New York 11106.

9. Upon information and belief, Mohammed Faroque is an individual conducting and transacting business at 3302 Broadway, Astoria, New York 11106.

10. Upon information and belief, defendants, including yet to be identified John Does and Jane Does, are present and/or doing business in New York, and are subject to the jurisdiction of this Court. The identities of the various John Doe and Jane Doe defendants are not presently known and the Complaint herein will be amended to include the name or names of these individuals when such information becomes available (each a "Doe" and collectively, "Does").

11. Upon information and belief, defendants, the XYZ Corporations, through their agents, servants, and employees are present and/or doing business in New York and are, or shall be, subject to the jurisdiction of this Court. The identities of such defendants are not presently known and the Complaint herein will be amended to include the names of the actual defendants when such information becomes available.

12. The parties identified in paragraphs 2 through 11 above are hereinafter collectively referred to as "Defendants."

## JURISDICTION AND VENUE

13. This is an action for trademark infringement, trademark counterfeiting, unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (the "Lanham Act") and for violation of the Racketeer Influenced and Corrupt Organizations

("RICO") Act as well as trademark infringement, unfair competition, dilution and deceptive acts and practices under the laws of the State of New York.

14. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338 (a) and (b); 15 U.S.C. §§ 1116 and 1121; and 18 U.S.C. § 1964. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiff's claims for trademark infringement, unfair competition, dilution and unlawful deceptive acts and practices under the laws of the State of New York.

15. This Court has personal jurisdiction over Defendants in that they do business in the State of New York.

16. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a); and 18 U.S.C. § 1965, in that the Defendants are entities or an individual subject to personal jurisdiction in this judicial district and have committed a significant number of the tortious acts complained of herein in this District.

## ROOCHI'S TRADEMARK

17. Since at least as early as 2002, Roochi has been manufacturing, advertising, offering for sale, selling and distributing in interstate commerce and in the State of New York t-shirts bearing the trademark COTTON HERITAGE (the "COTTON HERITAGE Mark") to wholesalers, distributors, and retailers who, in turn, re-sell COTTON HERITAGE t-shirts to the trade and consuming public.

18. Roochi is the owner of, *inter alia*, the entire right, title and interest in and to the federally registered COTTON HERITAGE Mark. A copy of which is annexed hereto as Exhibit A.

| Mark | Registration No. | Date of Issue |
|---|---|---|
| COTTON HERITAGE | 2595692 | July 16, 2002 |

19. The registration set forth in Exhibit A is valid, incontestable, subsisting, unrevoked and uncancelled. The registration of this mark constitutes *prima facie* evidence of its validity and conclusive evidence of Roochi's exclusive right to use the COTTON HERITAGE Mark in commerce in connection with clothing. The registration of the COTTON HERITAGE Mark also constitutes constructive notice to Defendants of Roochi's ownership and exclusive rights in such trademark.

20. Roochi has had millions of dollars in sales of products sold under the COTTON HERITAGE Mark.

21. Products sold under the COTTON HERITAGE Mark are recognized by the trade and public as those of Roochi exclusively.

**DEFENDANTS' CONDUCT**

22. Upon information and belief, beginning on or around March 2008, Defendants imported, distributed, offered for sale and sold counterfeit COTTON HERITAGE t-shirts (the "Counterfeit Products") in this judicial district.

23. The Counterfeit Products are not genuine Plaintiff's Products. Plaintiff did not manufacture, inspect or package the Counterfeit Products, and did not approve the Counterfeit Products.

24. Defendants' use of a counterfeit COTTON HERITAGE Mark is likely to cause confusion or mistake or deceive persons into the erroneous belief that Defendants' Counterfeit Products are genuine COTTON HERITAGE t-shirts or that Defendants or their Counterfeit

Products are authorized by Plaintiff or are endorsed by Plaintiff or are sponsored by Plaintiff or are connected in some way with Plaintiff.

25. Upon information and belief, Defendants' use of a counterfeit COTTON HERITAGE Mark was deliberate and intentional and designed to create confusion and mistake and to deceive persons into the incorrect belief that Defendants or its Counterfeit Products are genuine Roochi COTTON HERITAGE t-shirts or that Defendants or their Counterfeit Products are authorized by Plaintiff or are endorsed by Plaintiff or are connected in some way with Plaintiff.

26. Defendants' use of a counterfeit COTTON HERITAGE Mark falsely designates the origin of Defendants' products and constitutes false descriptions and representations to the effect that Defendants' Counterfeit Products are genuine Roochi COTTON HERITAGE t-shirts or that Defendants or their Counterfeit Products are authorized by Roochi or are endorsed by Roochi or are sponsored by Roochi or are connected in some way with Roochi.

27. Roochi believes that it is or is likely to be damaged by Defendants' use of said false designations, descriptions and representations in that purchasers are likely to buy Defendants' Counterfeit Products in the mistaken belief that they are genuine Roochi COTTON HERITAGE t-shirts or that Defendants or their Counterfeit Products are authorized by Roochi or are endorsed by Roochi or are connected in some way with Roochi.

28. Defendants' use of the counterfeit Roochi Trademark will dilute the distinctive quality of Roochi's Trademark.

29. Upon information and belief, Defendants' use of a counterfeit COTTON HERITAGE Mark was deliberate and intentional and designed to dilute the distinctive quality of

Roochi's trademark. Upon information and belief, Defendants had knowledge of Plaintiff's prior rights in Plaintiff's Trademark

30.  Defendants' use of a counterfeit COTTON HERITAGE Mark is without Roochi's license, authorization or permission.

31.  The acts and conduct of Defendants have damaged Roochi and, unless restrained, will impair, if not destroy, the value of the COTTON HERITAGE Mark and the goodwill represented thereby, and Roochi has no adequate remedy at law.

## COUNT I

## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
(15 U.S.C. § 1114)

32.  Plaintiff repeats and realleges paragraphs 1 through 31 of the Complaint as if fully set forth herein.

33.  As a result of its long-term and continuous use of the COTTON HERITAGE Mark and the quality of goods manufactured, distributed and sold under the COTTON HERITAGE Mark, Plaintiff has developed considerable goodwill in its COTTON HERITAGE Mark. The trade and consuming public have come to know, recognize and identify goods, including t-shirts, bearing the COTTON HERITAGE Mark as the quality goods of Plaintiff.

34.  Upon information and belief, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's prior rights in Plaintiff's Trademark, and the fact that Defendants' Counterfeit Products bear a counterfeit COTTON HERITAGE Mark, Defendants have distributed, offered for sale and/or sold the Counterfeit Products to the trade and to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

35. Defendants' use of copies or simulations of Plaintiff's COTTON HERITAGE Mark is likely to cause and is causing confusion, mistake and deception among the trade and general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive the trade and public into believing the Counterfeit Products being sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill and sales.

36. This action is based on a scheme and conspiracy by and among Defendants to import, transport, warehouse, distribute and sell Counterfeit Products in New York and throughout the United States. Working in concert with each other and with other persons and entities as yet unknown, Defendants have distributed and sold Counterfeit Products as genuine COTTON HERITAGE products.

37. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT II

### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1114)

38. Plaintiff repeats and realleges paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39. The Counterfeit Products sold and offered for sale by Defendants are of the same general nature and type as Plaintiff's Products sold and offered for sale by Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

40. By misappropriating and using Plaintiff's COTTON HERITAGE Mark, Defendants misrepresent and falsely describe to the general public the origin and source of the

8

Counterfeit Products and create a likelihood of confusion by the trade and ultimate purchasers as to both the source and sponsorship of such merchandise.

41. Defendants' unlawful, unauthorized and unlicensed distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by Plaintiff, all to Defendants' profit and Plaintiff's great damage and injury.

42. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of Plaintiff's Trademark, in connection with their goods and services, in interstate commerce constitutes a false designation of origin and unfair competition.

43. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputations.

### COUNT III

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPTION ORGANIZATIONS ACT
### (18 U.S.C. § 1961 *et seq.*)

44. Plaintiff repeats and realleges paragraphs 1 through 43 of the Complaint as if fully set forth herein.

45. As detailed above, Tip Top Tees, Glamour Line, Glamour USA, Alpha Corp. and Mr. Paul ("Paul Entities") constitute an enterprise; or alternatively, the Paul Entities, Rose Deal, and Messrs. Rahman and Faroque formed an association-in-fact that constitutes an enterprise; or, alternatively, Tip Top Tees and Rose Deal, Alpha Corp. and Rose Deal, and Mr. Paul and Rose Deal formed an association-in-fact that constitutes an enterprise.

46. Defendants have engaged in a pattern of racketeering activity including acts trafficking in counterfeit goods (18 U.S.C. § 2320).

47. Defendants have intentionally trafficked in goods upon which they knowingly used counterfeit marks that are spurious, identical with or substantially indistinguishable from Plaintiff's COTTON HERITAGE Mark (which is registered for such goods on the Principal Register in the U.S. Patent and Trademark Office and in use by Plaintiff), and likely to cause confusion, to cause mistake, or to deceive, all in violation of 18 U.S.C. § 2320.

48. Through a pattern of racketeering activity, Defendants have acquired or maintained an interest in or control of an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce, all in violation of 18 U.S.C. § 1962(b).

49. At a minimum, as described above, Defendants have engaged in multiple acts of trafficking in counterfeit goods (in violation of 18 U.S.C. § 2320) therefore constituting a violation of 18 U.S.C.§ 1962(c).

50. Defendants have engaged and continue to engage in the above-complained of racketeering activity knowingly, willfully, and in bad faith.

51. The aforesaid acts have caused Plaintiff to sustain monetary damage, including injury to its business or property, in an amount to be determined at trial.

52. Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to recover from Defendants threefold the damages sustained and the cost of the suit, including reasonable attorney's fees.

53. The aforesaid acts have caused, and unless enjoined by this Court will continue to cause, irreparable harm to Plaintiff for which it has no adequate remedy at law.

## COUNT IV

## **COMMON LAW TRADEMARK INFRINGEMENT**

54. Plaintiff repeats and realleges paragraphs 1 through 53 of the Complaint as if fully set forth herein.

55. Plaintiff's COTTON HERITAGE Mark has valuable goodwill among the trade and with the consuming public.

56. With full knowledge of Plaintiff's COTTON HERITAGE Mark, Defendants have traded, and continue to trade, on the goodwill associated with Plaintiff's COTTON HERITAGE Mark, and mislead the trade and the public into assuming a connection between the Counterfeit Products and Plaintiff.

57. Defendant's unauthorized use of Plaintiff's COTTON HERITAGE Mark on the Counterfeit Products is likely to and does permit Defendants to pass off the Counterfeit Products to the trade and the general public as that of Plaintiff, all to the detriment of Plaintiff and the unjust enrichment of Defendant.

58. Defendants' acts of trademark infringement cause confusion, mislead and deceive the trade and the public as to the source of Defendants' Counterfeit Products, permitting Defendants to pass off the Counterfeit Products as the Plaintiff's merchandise, and falsely suggest a connection between the Defendants and Plaintiff and, will continue to do so, in violation of the common law of the State of New York, and to the detriment of Plaintiff and the unjust enrichment of Defendant.

59. Defendants' acts of trademark infringement have caused and will continue to cause Plaintiff irreparable harm unless restrained by this Court. Plaintiff has no adequate remedy at law.

## COUNT V

### UNFAIR COMPETITION IN VIOLATION OF
### NEW YORK STATE COMMON LAW

60. Plaintiff repeats and realleges paragraphs 1 through 59 of the Complaint as if fully set forth herein.

61. Plaintiff has acquired valuable goodwill in Plaintiff's COTTON HERITAGE Mark and the distinctive appearance of their genuine Plaintiff's Products.

62. Defendants' use of Plaintiff's COTTON HERITAGE Mark is likely to and does permit Defendant to palm off Defendants' Counterfeit Products as those of Plaintiff's, all to the detriment of Plaintiff and the unjust enrichment of Defendant.

63. Defendant, upon information and belief, with full knowledge of the distinctiveness of Plaintiff's COTTON HERITAGE Mark, intended to and did trade on the goodwill associated with Plaintiff's COTTON HERITAGE Mark and has misled and will continue to mislead the public into assuming a connection between Plaintiff and Defendants by Defendants' importation, distribution, offer for sale and sale of the Counterfeit Products.

64. Defendants' unauthorized use of Plaintiff's COTTON HERITAGE Mark has caused and is likely to continue to cause Plaintiff damage by tarnishing the valuable reputations and images associated with Plaintiff and its genuine goods. Defendants have further palmed off its goods as Plaintiff's goods by Defendants' false labeling and misrepresentations to the trade and consumer public, members of whom are likely to and do believe the Counterfeit Products emanate from or are associated with Plaintiff.

65. The acts of Defendants confuse, mislead and deceive the trade and the public as to the source of Defendants' goods, permit and accomplish palming off of Defendants' goods as

those of Plaintiff and falsely suggest a connection with Plaintiff, constitute acts of unfair competition with Plaintiff in violation of the laws of the State of New York.

66. Defendants' acts have caused and will continue to cause Plaintiff irreparable harm unless enjoined by this Court. Plaintiff has no adequate remedy at law.

## COUNT VI

### NEW YORK TRADEMARK DILUTION
### (New York General Business Law § 360(l))

67. Plaintiff repeats and realleges paragraphs 1 through 66 of the Complaint as if fully set forth herein.

68. Defendants' acts have caused damage to Plaintiff by tarnishing Plaintiff's valuable reputation and diluting or blurring the distinctiveness of Plaintiff's COTTON HERITAGE Mark in violation of New York General Business Law § 360(l), and will continue to tarnish and destroy the value of Plaintiff's COTTON HERITAGE Mark unless enjoined by this Court.

69. Defendants' acts have caused and will continue to cause Plaintiff irreparable harm unless enjoined by this Court. Plaintiff has no adequate remedy at law.

## COUNT VII

### UNLAWFUL DECEPTIVE ACTS AND PRACTICES
### (New York General Business Law § 349)

70. Plaintiffs repeat and reallege paragraphs 1 through 69 of the Complaint as if fully set forth herein.

71. Upon information and belief, Defendants, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's prior rights in Plaintiff's COTTON HERITAGE Mark, and the fact that Defendants have imported, distributed, offered for sale and/or sold the

Counterfeit Products to the trade and the consuming public in direct competition with Plaintiff's sale of genuine merchandise and in violation of New York General Business Law § 349.

72.     Defendants' use of copies or simulations of Plaintiff's COTTON HERITAGE Mark is likely to cause and is causing confusion, mistake and deception among the trade and the general purchasing public as to the origin of Defendant's Counterfeit Products, and is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff.

73.     Defendants' deceptive acts and practices involve public sales activities of a recurring nature.

74.     Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be temporarily and preliminarily enjoined and restrained for the pendency of this action and, thereafter, permanently:

(a)     from using Plaintiff's COTTON HERITAGE Mark, or any confusingly similar variation, in any manner in connection with the advertising, offering for sale, or sale of any product not Plaintiffs, or not authorized by Plaintiff to be sold in connection with of Plaintiff's COTTON HERITAGE Mark;

(b) from passing off, inducing, or enabling others to sell or pass off any product as and for products produced by Plaintiff, which are not Plaintiff's or not produced under the control and supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's Trademark;

(c) from committing any acts calculated to cause purchasers to believe that Defendants' products are those sold under the control and supervision of Plaintiff, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Plaintiff;

(d) from further diluting and infringing Plaintiff's Trademark and damaging Plaintiff's goodwill;

(e) from otherwise competing unfairly with Plaintiff in any manner;

(f) from shipping, delivering, distributing, returning or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's mark;

(g) from further engaging in racketeering activity as described above;

2. That Defendants, their officers, agents, servants, employees, attorneys, confederates, and agents and any persons in active concert or participation with them, and any banks, savings and loan associations or other financial institutions, or agencies which engage in the transfer of assets or real property, who receive actual notice of the Court's order, by personal service or otherwise, shall be temporarily restrained and enjoined from transferring, disposing of, or secreting any money, stocks or other assets of Defendants, without prior approval of the Court, except as to a Defendant that files with the Court and serves upon Plaintiffs' counsel: (1) an accounting of Defendant's assets having a value of five thousand dollars ($5,000) or more,

and the location and identity thereof; and (2) uncontradicted documentary proof accepted by Plaintiffs (such acceptance not to be unreasonably withheld) that particular assets are not proceeds of Defendant's counterfeiting activities, in which case those particular assets shall be released to the Defendant.

3. That Defendants be required upon service of this Complaint to immediately deliver up to Plaintiffs any and all products, guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession of Defendants or under their control bearing Plaintiff's COTTON HERITAGE Mark, or each of them, alone or in combination with any other words, or used in connection with the advertising, offering for sale or sale of products not Plaintiff's, or not made under the authorization and control of Plaintiff.

4. That Defendants be required upon service of this Complaint to immediately supply Plaintiff with a complete list of entities from whom they purchased and to whom they distributed and/or sold products falsely bearing Plaintiff's COTTON HERITAGE Mark or products not authorized by Plaintiff to be sold in connection with such mark.

5. That Defendants be required upon service of this Complaint to immediately deliver up for destruction their entire inventory of such products bearing Plaintiff's COTTON HERITAGE Mark.

6. That Defendants, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner in which Defendants have complied with paragraphs 1 through 5, *supra*.

7. That Plaintiff be awarded statutory damages and that such statutory damages be increased for willful counterfeiting pursuant to Section 35(c) of the Lanham Act, 15 U.S.C., § 1117(c).

8. That Plaintiff be awarded three times the amount of damages caused by Defendants' willful acts of infringement, counterfeiting, racketeering, dilution and unfair competition complained of herein.

9. That Plaintiff be awarded punitive damages arising out of the willful nature of Defendants' activities.

10. That Plaintiff be awarded its costs and disbursements of this civil action, including reasonable attorneys' fees.

11. That Plaintiff be awarded such other and further relief as the Court deems just and equitable.

KENYON & KENYON LLP

Dated: April 10, 2008      By _____
Michelle Mancino Marsh (MM 1494)
Mimi K. Rupp (MR 0007)

One Broadway
New York, New York 10004
Tel.: (212) 425-7000

*Attorneys for Plaintiff*

Roochi Traders Incorporated

# EXHIBIT A

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

Reg. No. 2,595,692

**United States Patent and Trademark Office**  Registered July 16, 2002

## TRADEMARK
### PRINCIPAL REGISTER

## COTTON HERITAGE

ROOCHI TRADERS, INC. (CALIFORNIA CORPORATION)
6393 E. WASHINGTON BLVD.
CITY OF COMMERCE, CA 90040

FOR: APPAREL WHICH IS MADE IN WHOLE OR SIGNIFICANT PART FROM COTTON, NAMELY, SHIRTS, SWEATSHIRTS, PANTS, SWEATPANTS, SHORTS, TANK TOPS, TRACK SUITS, AND VESTS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 1-15-2002; IN COMMERCE 1-15-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COTTON", APART FROM THE MARK AS SHOWN.

SN 76-150,210, FILED 10-19-2000.

CHRISIE B. KING, EXAMINING ATTORNEY